UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

MARK SHANNON     Plaintiff

v.     Civil Action No. 4:23-cv-25-RGJ

LIBERTY MUTUAL INSURANCE CO. ET AL.     Defendants

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Defendant Liberty Mutual Insurance Co., ("Liberty") moves for summary judgment. [DE 37]. Plaintiff Mark Shannon ("Shannon") responded, [DE 41], and Liberty replied. [DE 42]. This matter is ripe. For the reasons below, Liberty's motion for summary judgment is **GRANTED**.

### I.     BACKGROUND

The Court incorporates the procedural and factual background set forth in its order on the previous six motions. [DE 40]. Shannon crashed into a Henderson County, Kentucky underpass, and filed a claim for Personal Injury Protection ("PIP") under his automobile insurance policy with Liberty. [DE 1 at 2-3; DE 8 at 36]. Liberty initially approved Shannon's claim after receiving doctor's notes purportedly from Tri-State Orthopedics ("Tri-State"), stating that Shannon was restricted from work. [DE 41-7 at 473-74; DE 37-2 at 378-79]. Liberty later denied Shannon's claim after Liberty's investigation department contacted Tri-State to verify the notes and were informed that the notes were not legitimate. [DE 41-7 at 474; DE 37-2 at 379]. Shannon received "approximately eight (8) weeks of los[t] wage payment[s] . . . at which time Liberty declined any further coverage." [DE 1 at 3]. Shannon sued Liberty, alleging claims for breach of contract, bad faith, and loss of consortium. [*Id.* at 3-4].

1

On December 21, 2023, Liberty moved for summary judgment, arguing that Shannon submitted fake doctor's notes to support his claim for lost wage benefits under his automobile insurance policy and that Liberty was entitled to void his policy due to this alleged fraud. [DE 37 at 299-301]. On January 26, 2024—after the time to respond had passed—Shannon filed a motion for extension of time to respond asserting that his detention center's kiosk malfunctioned, and he could not research his response in opposition. [DE 39 at 436]. The Court held Liberty's motion for summary judgment in abeyance and granted Shannon an extension of time to respond in opposition. [*Id.*]. Shannon responded, [DE 41], and Liberty replied, arguing that Shannon has failed to create a genuine issue of material fact, and it is entitled to summary judgment on Shannon's claims and on Liberty's counterclaim for reimbursement of the payments it made. [DE 42 at 477-80].

## II.     STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. The movant has the initial burden to demonstrate the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514 (discussing Fed. R. Civ.

P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356, 89 L. Ed. 2d 538 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

## III. DISCUSSION

Liberty moves for summary judgment on Shannon's breach of contract claim, arguing that Shannon's policy is void pursuant to the policy's fraud provision, which states in relevant part:

> We may void this policy or deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim. We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss.

[DE 37-1 at 366]. Liberty argues Shannon's policy is void because he submitted fraudulent doctor's notes from Tri-State to support his claim for PIP lost wage benefits, [DE 37 at 304-07], and that Liberty is entitled to reimbursement of $3,946.63 in PIP payments it made to Shannon. [*Id*. at 310]. Liberty also moves for summary judgment on Shannon's bad faith claims, arguing that because Shannon's fraud voided the policy, Liberty has no obligation to pay his claim. [*Id*. at 308-09].

### 1. Shannon's Breach of Contract Claim

In Kentucky, "an insurance policy is a contract, and insofar as it does not contravene the law any recovery against the insurance company is governed solely by its terms." *Proctor v. GEICO Gen. Ins. Co.*, 360 F. Supp. 3d 626, 633 (E.D. Ky. 2019) (quoting *State Farm Mut. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 557 (Ky. 1977). Fraud and material misrepresentation provisions are "routinely enforced by courts," and Shannon does not challenge the fraud provision's validity. *Alvey v. State Farm Fire & Cas. Co.*, 361 F. Supp. 3d 703, 706 (W.D. Ky. 2019); *see Baymon v. State Farm Ins. Co.*, 257 Fed. Appx. 858 (6th Cir. 2007) (finding that false statements regarding an insured's financial status were material and voided coverage as a matter of law). Accordingly, the Court is required to determine two things: first, and "without making a judgment as to credibility," whether Shannon has made misrepresentations as a matter

4

of law. *Id*. Second, if Shannon has made misrepresentations, whether those misrepresentations were material as a matter of law. *Id*.

    *a. Misrepresentation*

Liberty attaches the affidavit of Stephen Tognetti, one of Liberty's claim investigators, who states that Shannon submitted letters purportedly from Tri-State that assert Shannon was medically restricted from working. [DE 37-2 at 378-79]. Liberty attaches the five letters, [DE 37-3 at 392-96], and it also attaches an affidavit from Tri-State's Compliance Coordinator, Tracy Gussler, who states that the five letters are not legitimate and did not originate from Tri-State's office. [DE 37-3 at 389]. Shannon does not dispute that these letters are fraudulent; instead, Shannon contends that he did not send the letters, attaching an affidavit stating that "[a]t no time, have I the [p]laintiff provided "any" [sic] disability notes to Liberty Mutual or anyone in connection with the Defendant(s)." [DE 41-1 at 464]. Shannon implies that a third-party impersonated him in sending the letters, asserting that he has "not been contacted by the Defendant(s)," and "was contacted by the Vanderburgh County Public Defender's Office by letter advising me of the fact that my identity had been compromised." [DE 41-1 at 464]. Liberty argues that these two statements are unsupported by evidence and do not create an issue of fact sufficient to survive summary judgment. [DE 42 at 476-80].

To begin, claims in affidavits submitted at summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Although a party "may resist a summary judgment motion by presenting evidence not in an admissible *form*, such as an affidavit, the evidence itself still must be admissible." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Shannon lacks personal knowledge of the alleged identity

theft other than his claim that the Vanderburgh County Public Defender's Office contacted him. And in any event, the statements made to Shannon by the public defender's office are inadmissible hearsay—out of court statements being asserted for the truth of the matter asserted that are not covered by an exception. Fed. R. Evid. 801(c). Affidavits at the summary judgment stage may not rely on inadmissible hearsay because inadmissible hearsay "cannot create a genuine issue of material fact." *Id*; *see Totman v. Louisville Jefferson Cnty. Metro. Gov't*, 391 F. App'x 454, 464 (6th Cir. 2010); *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (holding that affiant's "statement . . . based upon his 'belief' . . . did not demonstrate the personal knowledge required by" Rule 56). Accordingly, this statement does not create a genuine issue of material fact as to whether Shannon submitted the fraudulent letters.[1]

Whether Shannon's statement that "[a]t no time, have I the [p]laintiff provided "any" [sic] disability notes to Liberty Mutual or anyone in connection with the Defendant(s)," [DE 41-1 at 464], creates a genuine issue of material fact presents a closer question. An "unequivocal denial" in an affidavit can create a genuine dispute of fact. *Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 840 (6th Cir. 2021). However, "where self-serving testimony is blatantly and demonstrably false," *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020) (citing *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)), or "totally implausible," *CenTra,*

---

[1] Even if the statement were admissible, it still would not create an issue of fact sufficient to survive summary judgment. Although the Court "must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor," *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587), it is "not allowed to stack inference upon inference to preserve an issue for the jury." *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 86 n.2 (6th Cir. 1995) (Wellford, J., dissenting). Shannon asserts that "Defendant(s) were contacting some [sic] other than Plaintiff," [DE 41 at 454], based on his affidavit statement that his "identity had been compromised." [DE 41-1 at 464]. But even taking this statement as true, it would require a factfinder to infer that: (1) Shannon's identity was compromised to the extent that an unidentified third-party impersonated him; (2) the third-party forged the Tri-State notes and submitted them to Liberty; and (3) did so using Shannon's email address. A reasonable factfinder could not draw these inferences based solely on the assertion that Shannon's identity "had been compromised."

*Inc. v. Estrin*, 538 F.3d 402, 419 (6th Cir. 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989)), such evidence does not create a "*genuine* issue of material fact." *Davis*, 951 F.3d at 750. A court's analysis of "totally implausibility" is not the same as a credibility determination. The Supreme Court's holding in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) "authorizes an inquiry on summary judgment into the 'implausibility' of inferences from circumstantial evidence . . . not an inquiry into the credibility of direct evidence." *St. v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 n.21 (6th Cir. 1989) (quoting *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir. 1988)). As the Fifth Circuit has noted, "the totality of the facts must be examined and [the plaintiff's] claim appraised within this factual context." *Knight v. Sharif*, 875 F.2d 516, 523 (5th Cir. 1989) (citing *Matsushita,* 475 U.S. 574). Liberty's claim investigator's affidavit asserts that Shannon submitted the fraudulent Tri-State notes in support of his PIP lost wage claim. [DE 37-2 at 378-79]. Shannon does not deny that the Tri-State notes are fake, or that they were submitted from his email; he merely denies that *he* sent them—asserting that an unidentified third party stole his identity. [DE 41-1 at 464; *see Id*. at 457]. While Shannon's denial cannot be characterized as blatantly and demonstrably false, it is implausible that an unidentified third party impersonated Shannon and submitted the fake Tri-State notes to support Shannon's lost wage claim, particularly when the

7

record is devoid of any other evidence—direct or circumstantial—to support this assertion.[2] Even when viewing the facts in the light most favorable to Shannon and drawing all reasonable inferences in his favor, no reasonable juror could find, based on Shannon's unsupported allegations alone, that there is a genuine issue of material fact about whether Shannon committed a misrepresentation in submitting the Tri-State notes. *See e.g., Proctor v. GEICO Gen. Ins. Co.*, 360 F. Supp. 3d 626, 638 (E.D. Ky. 2019) ("No reasonable jury could conclude, based on Proctor's unsupported allegations alone, that Proctor suffered from a memory problem so severe that it indicates that he did not know that he made a significant misrepresentation regarding the purchase price of the RV.").

   b. *Materiality*

Next, the Court must determine whether Shannon's misrepresentations were material. Under Kentucky law, a misrepresentation or fraud is considered material "when it has the potential to significantly affect the insurance company's decision to payout on the claim." *Alvey*, 361 F. Supp. 3d at 710; *Proctor v. GEICO Gen. Ins. Co.*, 360 F. Supp. 3d 626 (E.D. Ky. 2019).

---

2 Indeed, Shannon only raised his identity theft argument in response to Liberty's motion for summary judgment, and in fact, made contradictory statements in the record before Liberty's motion. For example, in Shannon's response to Liberty's motion to dismiss, Shannon argued that "[a]t no time did these defendants give Plaintiff any indication that they thought Plaintiff's disability notes were "fake" or Plaintiff would have went [sic] to the Orthopedic [sic] and rectified the matter on-site at the Orthopedic office." [DE 30 at 147]. In his pretrial memorandum, Shannon argued that "[g]enerally, an insurer has the right to void coverage due to fraud in making the policy," [DE 34 at 235], asserted that "a material misrepresentation or omission of fact in an insurance application, relied on by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option, which has "no" [sic] prospective application regarding the plaintiff's coverage," [*id.*], and concluded that "the Plaintiff made "no" [sic] misrepresentation in his application for coverage, and coverage shall not be voided after an accident has occurred." [*Id.*]. Shannon originally referred to the Tri-State notes as "Plaintiff's" notes that he would have "rectified" if he knew Liberty thought they were fake, and then argued that Liberty could only void his policy if he had committed fraud at the time of the issuing, making, and application of the policy but not for fraud committed after. Only after Liberty produced an affidavit asserting that the Tri-State notes were fake, [DE 37-3 at 89-90], and correctly noted that it was allowed to void a policy for fraud during either the application or claim process, [DE 37 at 305], did Shannon disavow any knowledge of the fraudulent notes.

In this case, reasonable minds cannot differ on whether the Tri-State notes had the potential to significantly affect Liberty's decision to pay Shannon's claim. First, "[i]t goes without saying that an insurance company attaches importance to the claimed value of the items for which its insured seeks compensation." *Am. Com. Ins. Co. v. Combs,* No. CV 09-382-GFVT, 2011 WL 13192697, at *4 (E.D. Ky. May 2, 2011). Similarly, an insurance company attaches importance to whether a person is medically restricted from work when they seek payment of lost wage benefits. Moreover, Liberty's claim investigator's affidavit asserts that the fraudulent Tri-State notes affected Liberty's decision to pay Shannon's claim: "[i]n issuing these payments, Liberty relied on doctor's notes Mark Shannon submitted to Liberty purportedly from Tri-State Orthopaedics stating that Mark Shannon was treating and restricting from work." [DE 37-2 at 378-79]. Furthermore, Shannon does not dispute that the Tri-State notes had the potential to significantly affect Liberty's decision to pay his claim.

Accordingly, even when viewing the facts in the light most favorable to Shannon and drawing all reasonable inferences in his favor, Shannon's misrepresentations were material, and they render Shannon's policy void pursuant to its fraud provision. As a result, the Court **GRANTS** Liberty's motion for summary judgment on Shannon's breach of contract claim.

### 2. Shannon's Bad Faith Claims

Under Kentucky law, a cause of action for bad faith has three elements:

> (1) the insurer must be obligated to pay the claim under the terms of the policy*;* (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) (quoting *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky. 1993)).

9

Liberty argues that because the fraud provision in Shannon's policy renders it void, Liberty had no obligation to pay Shannon's claim, and in any event, Liberty had a reasonable basis for denying the claim. Because the Court finds that Shannon's material misrepresentations rendered his policy void, Liberty is entitled to summary judgment as a matter of law on Shannon's bad faith claims, as "absent a contractual obligation to pay, [defendant] cannot be liable for bad faith." *Combs,* 2011 WL 13192697, at *4 (citing *Davidson,* 25 S.W.3d at 100). But even if Liberty did have an arguable obligation to pay Shannon's claim, Shannon has not pointed to any evidence in the record to support the other two elements, that that Liberty lacked a reasonable basis in fact or law for denying his claim or did so with reckless disregard—much less with the "malevolent intent" Shannon alleges. [DE 41 at 458].

Shannon argues that two actions demonstrate Liberty's bad faith: (1) when Liberty initially notified Shannon that his policy did not include PIP coverage; and (2) when it separately canceled Shannon's policy on August 16, 2021. [*Id*.]. Turning to Shannon's first argument, Shannon's original policy, on its face, included only "Guest PIP" coverage, [DE 37-1 at 336], and does not include No-Fault PIP coverage—which were the kind of benefits Shannon was attempting to claim. [*Id.*]. Shannon attaches a letter from his claims specialist, informing Shannon that his policy did not contain the relevant PIP coverage. [DE 41-3 at 468]. The claims specialist also stated that Shannon must have filed a signed rejection form with the Kentucky Department of Insurance ("KDOI") to reject PIP coverage, and if Shannon had not done so, that PIP coverage would be added to his policy. [*Id*.]. Shannon also attaches a letter from the KDOI informing Liberty that Shannon had not rejected PIP coverage, [DE 41-3 at 469], and Liberty then retroactively added PIP coverage to the beginning of Shannon's policy period. [DE 37-1 at 332]. Yet Shannon does not explain how these facts demonstrate Liberty's bad faith, and even when viewing the facts in

10

the light most favorable to Shannon and drawing all reasonable inferences in his favor, none of this creates a genuine dispute of material fact whether Liberty lacked a reasonable basis in fact or law for initially denying his claim, or that it did so with reckless disregard.

Shannon's second argument is that KRS 304.20-040(4)(a)(5), in relevant part, forbids an insurer from canceling a policy solely based on identity theft, and when Liberty canceled Shannon's policy on August 16, 2021, it acted in bad faith with "malevolent intent." [DE 41 at 458]. Yet, Shannon's only evidence of identity theft is the inadmissible hearsay of the Vanderburgh County Public Defender's Office. [DE 41-1 at 464]. Moreover, the August 2021 cancellation occurred approximately seven months before Liberty voided Shannon's policy due to the fraudulent Tri-Care notes, on March 17, 2022. A letter from Liberty that Shannon attaches to his response states that the cancellation was effective on August 16, 2021, and provided insurance protection for another twenty five days. [DE 41-4 at 470]. Shannon alleges his accident occurred on July 7, 2021, [DE 1 at 2], which the cancellation did not affect—demonstrated by the fact that Liberty made payments on Shannon's PIP claim through November 2021. [DE 37-4 at 422]. Liberty's claim investigators' affidavit asserts that Liberty began investigating the legitimacy of the Tri-State notes in December 2021, [DE 37-2 at 379; DE 41-7 at 474]; and sent a letter to Shannon on March 17, 2022, informing Shannon that Liberty would not cover his PIP claim due to fraud, [DE 37-2 at 385-86], not identity theft.

Even when viewing the facts in the light most favorable to Shannon and drawing all reasonable inferences in his favor, these facts do not create a genuine dispute of material fact whether Liberty lacked a reasonable basis in fact or law to cancel Shannon's policy. Moreover, because Shannon made material misrepresentations to Liberty that render Shannon's policy void pursuant to its fraud provision, Liberty was entitled to cancel Shannon's policy once it discovered

11

the fraudulent Tri-State notes. Accordingly, the Court **GRANTS** Liberty's motion for summary judgment on Shannon's bad faith claims.

### c. Loss of Consortium

While Liberty does not explicitly move for summary judgment on Shannon's loss of consortium claim in its motion, it argues that because Shannon's breach of contract and bad faith fail claims as a matter of law, it is entitled to summary judgment on all claims. [DE 37 at 310].

A claim for loss of consortium "is a derivative action that does not exist absent a primary claim." *Monak v. Ford Motor Co.*, 95 F. App'x 758, 768 (6th Cir. 2004) (citing *Wang v. Goodyear Tire & Rubber Co.*, 68 Ohio App.3d 13, 587 N.E.2d 387, 391 (1990)). As the Court has dismissed Shannon's breach of contract and bad faith claims, his loss of consortium claim must also be dismissed. Moreover, Shannon's response does not address his loss of consortium claim, [*see* DE 41], and any argument on that claim would therefore have been waived. *See, e.g., Rouse v. Caruso*, No. 06–CV–10961–DT, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011) ("It is well understood . . . that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). As a result, the Court **GRANTS** summary judgment to Liberty on Shannon's loss of consortium claim.

### d. Liberty's Counterclaim

Finally, Liberty moves for summary judgment on its counterclaim for reimbursement of PIP payments made to Shannon. Shannon's policy provides that when a policy is voided, "[i]f we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made." [DE 37-1 at 366]. Liberty attaches copies of emails asserting seven lost wage PIP payments to Shannon, [DE 37-4 at 397-425], as well as the affidavit

12

of Liberty's claims investigator, asserting Liberty paid Shannon a total amount of $3,946.63. [DE 37-2 at 378]. Because the Court finds Shannon's policy is void as a matter of law, Liberty is entitled to reimbursement of the lost wage PIP payments it made. *Combs*, 2011 WL 13192697, at *4 ("[T]he insurance policy is void as a matter of law. American Commerce owes no duty to pay Combs under the contract, and Combs must repay the money advanced to her by American Commerce.").

## IV. CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Liberty's Motion for Summary Judgment [DE 37] is **GRANTED.** Shannon's claims for breach of contract, bad faith, and loss of consortium are **DISMISSED with PREJUDICE**. Liberty's motion for summary judgment on its counterclaim is **GRANTED**, and judgment will be entered in favor of Liberty against Shannon for reimbursement in the amount of **$3,946.63.**

(2) This action is **STRICKEN** from the Court's docket.

(3) The Court will enter separate judgment.

Rebecca Grady Jennings, District Judge
United States District Court

June 26, 2024

cc: Counsel of record

13